UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: GRAND JURY INVESTIGATIONS,
CASE NO. 4:20-CR-20599
_____/

## WARNER NORCROSS + JUDD, BRIAN P. LENNON, AND SCOTT R. CARVO'S PETITION FOR DISCLOSURE OF GRAND JURY TRANSCRIPTS UNDER RULE 6(e)(3)(E)

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(i), Petitioners Warner Norcross + Judd LLP, Brian P. Lennon, and Scott R. Carvo petition the Court to authorize disclosure of the grand jury transcripts related to the Second and Third Superseding Indictments in case number 4:20-CR-20599 (E.D. Mich.) to the parties in case number 25-005034-NM (Wayne County Cir. Ct. 2025), their attorneys, the judge and court personnel involved in adjudicating the case, the expert witnesses involved in the case, and the facilitative mediator selected by the parties, the Honorable Mona K. Majzoub.

This Petition is supported by the accompanying brief.

Dated: December 19, 2025

By: /s/ *Amy E. Murphy*_____
    Amy E. Murphy (P82369)
    MILLER JOHNSON
    45 Ottawa Ave. SW, Suite 1100
    Grand Rapids, MI 49503
    (616) 831-1700
    murphya@millerjohnson.com
    *Attorneys for Petitioners*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: GRAND JURY INVESTIGATIONS,
CASE NO. 4:20-CR-20599

_____/

**BRIEF IN SUPPORT OF WARNER NORCROSS + JUDD, BRIAN P.
LENNON, AND SCOTT R. CARVO'S PETITION FOR DISCLOSURE
<u>OF GRAND JURY TRANSCRIPTS UNDER RULE 6(e)(3)(E)</u>**

## STATEMENT OF THE ISSUE PRESENTED

Whether, under Federal Rule of Criminal Procedure 6(e)(3)(E)(i), there is good cause for the court to authorize limited disclosure of grand jury materials from a now-concluded criminal matter where the grand jury materials are necessary for Petitioner's defense of a civil case and the interest in grand jury secrecy is diminished because the grand jury materials were discussed extensively in an on-the-record hearing where the trial court held that the prosecutor's presentation to the grand jury was materially misleading?

**Petitioners Answer**: Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211 (1979).

*In re Grand Jury 89-4-72*, 932 F.2d 481 (6th Cir. 1991).

# TABLE OF CONTENTS

Page

Statement of the Issue Presented ............................................................................... ii

Controlling or Most Appropriate Authority ............................................................. iii

Index of Authorities ................................................................................................... v

Introduction ................................................................................................................ 1

Background ................................................................................................................. 2

A.    Warner represented Ms. Locricchio's employer, Rehmann, in response to a subpoena. ................................................................................... 2

B.    Ms. Locricchio is later indicted in connection with the investigation. . 3

C.    The Court dismisses the indictment in part because the government presented false information to the grand jury about Ms. Locricchio's handwritten notes. ................................................................................... 5

D.    Ms. Locricchio sues Warner, claiming its legal malpractice caused her indictment. .......................................................................................... 8

Argument .................................................................................................................. 10

A.    Disclosure is Necessary to Avoid Injustice in the Civil Case. ............ 11

B.    The Need for Disclosure is Greater than the Need for Continued Secrecy. ............................................................................................... 13

C.    The Request is Structured to Cover Only the Necessary Material. .... 15

Conclusion ............................................................................................................... 16

# INDEX OF AUTHORITIES

Page(s)

**Cases**

*Anilao v. Spota*,
   918 F. Supp. 2d 157 (E.D.N.Y. 2013) .................................................................12

*Douglas Oil Co. v. Petrol Stops Nw.*,
   441 U.S. 211 (1979).............................................................................................10

*Federal Election Commission v. Rivera*,
   333 F.R.D. 282 (S.D. Fla. 2019).................................................................11, 12

*In re Grand Jury 89-4-72*,
   932 F.2d 481 (6th Cir. 1991) ..............................................................................10

*Jones v. City of Elyria*,
   No. 1:18-cv-929, 2018 WL 4042352 (N.D. Ohio Aug. 24, 2018) .....................12

*Temple Univ. v. Salla Bros., Inc.*,
   656 F. Supp. 97 (E.D. Pa. 1986).........................................................................15

*United States v. Aisenberg*,
   358 F.3d 1327 (11th Cir. 2004) ..........................................................................11

*United States v. Baggot*,
   463 U.S. 476 (1983).............................................................................................10

*United States v. McQuarrie*,
   No. 16-cr-20499, 2018 WL 1399322 (E.D. Mich. Mar. 20, 2018) ....................14

*United States v. Proctor & Gamble Co.*,
   356 U.S. 677 (1958).....................................................................................13, 14

*United States v. Rose*,
   215 F.2d 617 (3d Cir. 1954) ...............................................................................14

*Wheatt v. City of East Cleveland*,
   No. 1:17-cv-377, 2017 WL 3392485 (S.D. Ohio Aug. 8, 2017)........................12

**Statutes**

42 U.S.C. § 1983 ................................................................................................12

**Rules**

Federal Rule of Criminal Procedure 6(e)...........................................1, 2, 10

## INTRODUCTION

Nearly two years ago, this Court dismissed a criminal indictment against Rachel Locricchio with prejudice. The hearing transcript, filed on the public docket, indicates that the Court dismissed the indictment because the government's presentation to the grand jury was "false and grossly misleading." The false and misleading information, the Court found, "unquestionably had a significant impact" on the jury's indictment decision.

There is now a civil case, filed by Ms. Locricchio, spilling from that criminal matter. In it, Ms. Locricchio alleges that faulty legal work by Warner Norcross + Judd LLP attorneys Brian P. Lennon and Scott R. Carvo, not the government's misleading grand jury testimony, is the reason she was indicted. She asserts that her indictment "was a direct and proximate result" of Warner's actions.

The prosecutors' grand jury presentation—and whether that presentation was accurate—is a critical issue in the civil case. Ms. Locricchio has access to the grand jury materials, but Warner, Lennon, and Carvo (collectively, "Warner") do not.

Rule 6(e) allows this Court to disclose grand jury transcripts if the petitioning party has a "compelling or particularized need" for the transcripts. Just so here: Ms. Locricchio's allegations in the civil case give Warner a particularized need for the primary source material—the grand jury transcripts—to stand on equal footing and defend against Ms. Locricchio's allegations. Moreover, the interest in grand jury

secrecy is greatly reduced where, as here, key parts of the proceedings, including quotations from the government's grand jury presentation, were discussed on the record in a hearing.

The Court should grant Warner's petition under Federal Rule of Criminal Procedure 6(e)(3)(E)(i) and authorize disclosure of the grand jury materials to the parties in the civil case, their attorneys, the judge and court personnel involved in adjudicating the case, the expert witnesses involved in the civil case, and the facilitative mediator selected by the parties, the Honorable Mona K. Majzoub.

## BACKGROUND

### A.    Warner represented Ms. Locricchio's employer, Rehmann, in response to a subpoena.

In late 2017, accounting firm Rehmann Robson LLC received grand jury subpoenas related to its client, Cory Mann. The indictments stemming from this investigation alleged a scheme to unlawfully steal State of Michigan Traffic Crash Reports to identify and steer automobile crash victims to specific personal injury lawyers and health care providers, among others. *See* Third Superseding Indictment, *United States v. Angelo, et al.*, No. 4:20-CR-20599 ECF 441, PageID.9098 (E.D. Mich. Aug. 16, 2023). Rehmann hired Warner to represent it in responding to the subpoena.

Ms. Locricchio was an accountant at Rehmann who performed most of the accounting work for Mann and his companies. Over several years, Ms. Locricchio

sat for interviews with federal prosecutors and helped Rehmann identify potentially responsive documents. Because Warner represented Rehmann and Ms. Locricchio was a Rehmann employee and representative, Warner attorneys facilitated and accompanied Ms. Locricchio to those interviews.

As part of Rehmann's initial document production to the government, Ms. Locricchio scanned and sent to Warner several pages of handwritten notes, belonging to Rehmann, from her discussions with Mann. Warner inadvertently failed to include those scanned notes in Rehmann's initial production. In May 2023, when Warner realized the notes were not included in the initial production, it immediately produced the notes to the prosecutors. Warner explained in a cover email to federal prosecutors that a production error by Warner caused the delay.

**B.      Ms. Locricchio is later indicted in connection with the investigation.**

Between 2018 and 2023, Ms. Locricchio met with prosecutors multiple times as they built their case against Mann and prepared for trial. In early 2023, however, on the eve of trial and in preparation for her trial testimony, Ms. Locricchio revealed to the government a salacious fact: she had an affair with Mann during the time she served as his accountant. This affair continued throughout the first year of the government's investigation of Mann, while Ms. Locricchio was meeting with prosecutors, answering their questions, and providing them with information

relevant to their case and the impending trial. Rehmann terminated Ms. Locricchio's employment, and Ms. Locricchio retained her own attorney.

Three months later, in May 2023, the grand jury indicted Ms. Locricchio. The government charged Ms. Locricchio with participating in the preparation and filing of false federal tax returns for one of Mann's companies, Gravity Imaging, in violation of 26 U.S.C. § 7206. *See* Second Superseding Indictment, *United States v. Angelo, et al.*, No. 4:20-CR-20599 ECF 340, PageID.6113 (E.D. Mich. Aug. 16, 2023). In a superseding indictment filed in August 2023 (the Third Superseding Indictment in the case), prosecutors added an 18 U.S.C. § 1001 charge for allegedly making a false statement to the FBI about Gravity Imaging's organization as a partnership. *See* Third Superseding Indictment, No. 4:20-CR-20599, ECF 441, PageID.9150.

The government switched theories between the Second and Third Superseding Indictments. In the Second Superseding Indictment (the first to charge Ms. Locricchio), the government alleged that three individuals owned Gravity Imaging—defendant Cory Mann, defendant John Angelo, and Anthony Sereno—based in part on Mr. Sereno's grand jury testimony that he was an owner of the company. *See* Second Superseding Indictment, 4:20-CR-20599, ECF 340, PageID.6115, 6118, 6143 ¶¶ 9, 22, 92–93. The government's theory in the Second

Superseding Indictment was that Gravity Imaging allegedly failed to report income on its federal partnership tax return. *See id.*

The government changed course in the Third Superseding Indictment, alleging that Gravity Imaging was not a partnership at all but was instead wholly owned by defendant Cory Mann. *See* Third Superseding Indictment, 4:20-CR-20599 ECF 441, PageID.9099–9100, 9103, 9134–9148, ¶¶ 8, 22, 103–129. Thus, the government's tax theory changed from an alleged failure to report income on an otherwise valid partnership return to allegations that a partnership return should not have been filed at all, with Gravity Imaging's income instead reported on Mr. Mann's personal returns. *See id.*

**C.    The Court dismisses the indictment in part because the government presented false information to the grand jury about Ms. Locricchio's handwritten notes.**

The government's changing theories prompted questions about its presentation of the Third Superseding Indictment to the grand jury. The Court granted a defense motion for disclosure of grand jury materials, finding that "what happened here is troubling" and holding that "there's been a sufficient showing . . . to warrant, at a minimum, the disclosure of the materials that are sought in the motion." Transcript, *United States v. Angelo, et al.*, No. 4:20-CR-20599 ECF 573, PageID.13000, 13040 (E.D. Mich. Apr. 9, 2024). Ms. Locricchio, through her counsel, received grand jury materials as a result of the Court's order.

5

After defense counsel received the grand jury materials, it moved to dismiss the Third Superseding Indictment because the government sponsored false testimony to the grand jury. The Court held a hearing, in which it described several parts of the prosecution's presentation to the grand jury. *See* Transcript of Hearing on Defendants' Motion to Dismiss the Indictment, No. 4:20-cr-20599 ECF 608, PageID.16154–16155 (E.D. Mich. May 15, 2024). At the end of the hearing, it granted the motion and dismissed the indictment. *See id.*

The Court made two key findings. First, the Court found that the government misrepresented the process by which Rehmann produced Ms. Locricchio's handwritten notes. Before the grand jury, the prosecutors falsely blamed Ms. Locricchio for the delay in producing her notes. Rather than inform the grand jury about Warner's oversight in producing the notes that Ms. Locricchio provided, the FBI agent's grand jury testimony "reasonably left the Grand Jury with the impression that Ms. Locricchio was responsible for a failure to produce, in response to a subpoena, this note from 2016 that the government ultimately obtained and that it relies on now." *Id.*, PageID.16146–16147. The prosecutors knew that was inaccurate. "[G]overnment [counsel] had been informed before [the FBI agent testified in the grand jury] [that] Ms. Locricchio had sent notes in a notebook to Mr. Lennon at the Warner Norcross firm." *Id.*

6

In other words, it was not Warner's inadvertent delay in producing the handwritten notes to the government but the government falsely attributing that delay in an inculpatory manner to Ms. Locricchio that created a false impression before the grand jury. *Id.*, PageID.16154 ("[T]he way that this was presented, to me, created an inaccurate view, and the view was specifically inculpatory. That's the inference that I think was thrown out by the government and that the Grand Jury could well have made."); *see also id.*, PageID.16153–16154 ("I also think the handling of the matter with respect to Ms. Locricchio and the notes and the scanning in, that testimony that I reviewed earlier, I thought was presented in a materially misleading way, that was designed to cast aspersions on Ms. Locricchio.").

Second, the Court determined that the government did not inform the grand jury about evidence that contradicted its theory of Gravity Imaging's ownership. Among the evidence that the government presented to the grand jury in support of its theory that Gravity Imaging was a single member LLC were Ms. Locricchio's handwritten notes and testimony of the FBI case agent who stated that Mr. Sereno "indicated that he was never an owner of that entity [Gravity Imaging]." *Id.*, PageID.16146. But Mr. Sereno had previously testified that he was an owner of Gravity Imaging. *Id.*, PageID.16142–44 (paraphrasing Mr. Sereno's grand jury testimony). The Court determined that the government never informed the grand jury of that testimony, which "fundamentally contradict[ed] the core allegation

7

underlying the charges against Mr. Mann and Ms. Locricchio" in the Third Superseding Indictment. *Id.*, PageID.16147–48.

In sum, the Court found that the "grossly misleading" statements and false testimony that the government elicited through the FBI case agent were material to the government's securing the Third Superseding Indictment:

> And the next question is, as I indicated, that I believe I have to answer, is the question of prejudice. Is there a strong reason to believe that the testimony that I found to be both false and grossly misleading led to this indictment. And I think the answer there is, to me, yes – an unequivocal yes.

*Id.*, PageID.16154.

For these reasons, the Court dismissed the Third Superseding Indictment. *Id.*, PageID.16155. On November 26, 2024, the government stipulated that the dismissal of the counts against Ms. Locricchio was with prejudice. *See* Stipulation and Order, 4:20-cr-20599 ECF 626, PageID.16431 (E.D. Mich. Nov. 26, 2024).

**D.    Ms. Locricchio sues Warner, claiming its legal malpractice caused her indictment.**

In April 2025, Ms. Locricchio filed a civil lawsuit against Warner, former Warner partner Brian Lennon, and current Warner partner Scott Carvo. *See* Defendants' Answer and Affirmative and Other Defenses, case number 25-005034-NM (Wayne County Cir. Ct. 2025), attached as **Exhibit 1**. Although Warner never

represented Ms. Locricchio, Ms. Locricchio alleges legal malpractice, breach of fiduciary duty, and tortious interference with a business relationship. *See id*.

One of the pillars of Ms. Locricchio's malpractice and fiduciary duty claims is that "[t]he issuance of an arrest warrant and the indictment of Locricchio was a direct and proximate cause of the Defendants' malfeasance and malpractice." *Id.* ¶ 51. She ties this to Warner's alleged delay in producing the handwritten notes. She alleges that Warner's actions caused the prosecution to take an adversarial stance toward her. *See id.* ¶¶ 19, 22, 48, 50.

Warner sharply disputes this allegation. Its answer asserts that "Defendants' actions were not the direct and proximate cause" of Ms. Locricchio's indictment. *Id.*, Affirmative Defenses ¶ 11. Further, in discovery, Warner filed a Notice of Nonparties at Fault under MCR 2.112(K), identifying the United States as a nonparty at fault for Ms. Locricchio's asserted injuries "[b]ecause prosecutorial misconduct is the direct and proximate cause of Locricchio's indictment." Notice of Nonparties at Fault, attached as **Exhibit 2**.

An essential part of Warner's defense theory in the civil action, therefore, is that the government's established prosecutorial misconduct—not any alleged misconduct or malpractice on Warner's part—resulted in Ms. Locricchio's indictment.

## ARGUMENT

Under Federal Rule of Criminal Procedure 6(e)(3)(E)(i), the Court may disclose matters occurring before a grand jury if the party seeking disclosure demonstrates that (1) the disclosure is sought "preliminarily to or in connection with a judicial proceeding"; and (2) a compelling or particularized need for disclosure exists that will overcome the general presumption in favor of grand jury secrecy." *In re Grand Jury 89-4-72*, 932 F.2d 481, 483 (6th Cir. 1991). The term "judicial proceedings" encompasses pending civil litigation. *See, e.g.*, *United States v. Baggot*, 463 U.S. 476, 481 (1983) ("[T]he Rule contemplates . . . uses related fairly directly to some identifiable litigation, pending or anticipated."); *see also id.* at 479 n.2 (describing "garden-variety civil actions" as "qualify[ing] as judicial proceedings" under the rule).

To demonstrate a compelling or particularized need, the party seeking disclosure must establish that (1) the material is necessary to avoid possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) the request is structured to cover only material so needed. *See Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218–24 (1979). All three factors are met here.

10

A.      **Disclosure is Necessary to Avoid Injustice in the Civil Case.**

A party's need for grand jury material as the primary, if not exclusive, source material to prove its claims in a civil case—particularly where the criminal and civil cases present an identity of issues and witnesses—weighs strongly in favor of disclosure. Otherwise, a party in a related civil case like Ms. Locricchio could have her cake and eat it too. In *Federal Election Commission v. Rivera*, 333 F.R.D. 282, 284 (S.D. Fla. 2019), for example, the Federal Election Commission (the "FEC") sought the disclosure of grand jury materials, after related criminal proceedings ended, for use in proving claims in its civil case. The grand jury materials were the only source of evidence for the FEC's claims: certain documents presented to the grand jury were unavailable in civil discovery and the FEC required the transcript of a witness's grand jury testimony to contradict a witness's declaration filed in the civil case.

The *Rivera* court held that disclosure of grand jury materials was necessary to avoid injustice in the civil case, noting that "disclosure is appropriate when 'circumstances have created [certain] difficulties peculiar to this case, which could be alleviated by access to specific grand jury materials, without doing disproportionate harm to the salutary purpose of secrecy embodied in the grand jury process.'" *Id.* at 286 (quoting *United States v. Aisenberg*, 358 F.3d 1327, 1348–49 (11th Cir. 2004)). The court found that such peculiar difficulties existed: the FEC's

civil case "would be significantly hindered without the requested material" because "no other means to obtain the information requested contained in the materials seem to exist." *Id.*

Similar considerations arise in cases involving prosecutorial misconduct before the grand jury, where disclosure is necessary to avoid injustice in related civil cases where that same misconduct is at issue. This often arises in civil actions filed under 42 U.S.C. § 1983, where alleged prosecutorial misconduct forms the basis of a claim in the civil suit. *See, e.g.*, *Wheatt v. City of East Cleveland*, No. 1:17-cv-377, 2017 WL 3392485, at *3 (S.D. Ohio Aug. 8, 2017) (citing the "logical connection between [the claims in the civil case] and information likely to be in grand jury transcripts"); *Jones v. City of Elyria*, No. 1:18-cv-929, 2018 WL 4042352, at *7 (N.D. Ohio Aug. 24, 2018) (applying *Wheatt* and finding a "'logical connection' between [the plaintiff's] allegations of false testimony and the grand jury matter he requests"). In *Anilao v. Spota*, 918 F. Supp. 2d 157, 177–78 (E.D.N.Y. 2013), the court explained:

> The events of the Grand Jury are, therefore, critical to plaintiffs' false arrest claim, and because plaintiffs were not present during the Grand Jury proceedings, without the grand jury minutes, [plaintiffs are] in no position to make specific arguments on this score. Thus, the Court concludes that denying plaintiffs access to evidence of what happened at the Grand Jury would create a strong potential for injustice in their pursuit of the civil rights claims in this case.

*Id.* (quotation omitted).

In this case, one of Warner's defenses to causation in the civil case is that the confirmed prosecutorial misconduct in the federal criminal case, not any alleged malpractice by Warner, led to Ms. Locricchio's federal indictment. But Warner lacks the underlying source materials and is left to rely on the hearing transcript, which is not direct evidence and discusses only select parts of the grand jury presentation. The grand jury transcripts relating to the Second and Third Superseding Indictments are the only source material from which to prove that the government's misconduct led the grand jury to have an inaccurate view of the facts and circumstances surrounding disclosure of Ms. Locricchio's handwritten notes. In these circumstances, and under the authority cited above, disclosure of grand jury transcripts relating to the Second and Third Superseding Indictments is necessary to avoid injustice by frustrating Warner's ability to fully defend the civil case.

**B.    The Need for Disclosure is Greater than the Need for Continued Secrecy.**

In *United States v. Proctor & Gamble Co.*, 356 U.S. 677 (1958), the Supreme Court explained the policies underlying grand jury secrecy:

(1)    [t]o prevent the escape of those whose indictment may be contemplated;

(2)    to insure the utmost freedom to the grand jury in its deliberation, and to prevent persons subject to indictment or their friends from importuning the grand jurors;

(3)    to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it;

(4)    to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes;

(5)    to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Id.* at 681–82 n.6 (quoting *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954)).

The first four considerations are inapplicable here: the criminal case has been dismissed with prejudice and the reviewing grand jury has been released. The names of the witnesses who testified before the grand jury are well known and a matter of public record given the on-the-record discussions in the criminal case. *See, e.g.,* Transcript of Hearing on Defendants' Motion to Dismiss, 4:20-cr-20599 ECF 608, PageID.16057 (E.D. Mich. May 15, 2024) (describing FBI Special Agent Mirabella's grand jury testimony). Likewise, the transcripts of hearings on defense motions to disclose grand jury material and dismiss the Third Superseding Indictment include extensive discussions of the facts and details surrounding the government's investigation of the defendants, including Ms. Locricchio. None of the *Proctor & Gamble* considerations support a strong need for continued secrecy in this case. *See United States v. McQuarrie*, No. 16-cr-20499, 2018 WL 1399322, at *2 (E.D. Mich. Mar. 20, 2018) ("Grand jury proceedings have ceased, so disclosure will not risk interference with deliberations, potential witnesses, or potential evidence.").

14

The discussion of grand jury testimony on the public record in the criminal matter, both paraphrased and with specific quotations that the Court read into the record, further undermine the need for continued secrecy. *See Temple Univ. v. Salla Bros., Inc.*, 656 F. Supp. 97, 108 (E.D. Pa. 1986) ("[P]arts of this [grand jury] material have been referred to in the . . . indictment, in open court at the . . . change of plea hearings, and in the Government's sentencing memorandum, which are all now a matter of public record. Whatever secrecy would usually attach to grand jury materials has in effect already been abrogated.").

While grand jury transcripts are generally afforded greater secrecy protections than documents, Warner's demonstrated need for grand jury transcripts to avoid injustice in the civil case far outweighs the attenuated need for continued secrecy, given the criminal case has been dismissed, cannot be refiled, and includes a public record with extensive public discussions of testimony in those grand jury transcripts.

**C.    The Request is Structured to Cover Only the Necessary Material.**

Finally, Warner's request is narrowly tailored to the disclosure of the grand jury transcripts in connection with the Second and Third Superseding Indictments in the criminal case; the two indictments that named Ms. Locricchio as a defendant and which form part of the basis for her civil action. The series of events that led to Ms. Locricchio's charges in the Second and Third Superseding Indictments—including the false testimony presented and misleading colloquies before the grand jury that

supported the Court's finding of prosecutorial misconduct—are critical to Warner's defense against Locricchio's civil claims. Warner is not seeking disclosure of transcripts relating to the original Indictment or First Superseding Indictment.

## CONCLUSION

Warner Norcross + Judd LLP, Brian P. Lennon, and Scott R. Carvo respectfully request that the Court grant their petition for disclosure of grand jury transcripts related to the Second and Third Superseding Indictments in case number 4:20-CR-20599 (E.D. Mich.) and authorize disclosure of the grand jury transcripts to the parties in case number 25-005034-NM (Wayne County Cir. Ct. 2025), their attorneys, the judge and court personnel involved in adjudicating the case, the expert witnesses involved in the case, and the facilitative mediator selected by the parties, the Honorable Mona K. Majzoub.


Dated: December 19, 2025

By: /s/ *Amy E. Murphy*_____
Amy E. Murphy (P82369)
James R. Peterson (P43102)
Jeffrey A. Turner (P85291)
MILLER JOHNSON
45 Ottawa Ave. SW, Suite 1100
Grand Rapids, MI 49503
(616) 831-1700
murphya@millerjohnson.com
petersonj@millerjohnson.com
turnerj@millerjohnson.com

*Attorneys for Petitioners*